William A. GAYLE, Plaintiff,

v.

MAGAZINE MANAGEMENT COMPA-NY, A Partnership; Atlas Magazines, Inc., A Corporation; Non-Pareil Publishing Corporation, A Corporation; and American News Company, A Corporation, Defendants.

Frank W. PARKS, Plaintiff,

v.

MAGAZINE MANAGEMENT COMPA-NY, A Partnership; Atlas Magazines, Inc., A Corporation; Non-Pareil Publishing Corporation, A Corporation; and American News Company, A Corporation, Defendants.

Clyde C. SELLERS, Plaintiff,

v.

MAGAZINE MANAGEMENT COMPA-NY, A Partnership; Atlas Magazines, Inc., A Corporation; Non-Pareil Publishing Corporation, A Corporation; and American News Company, A Corporation, Defendants.

Civ. A. Nos. 1293N–1295N.

United States District Court
M. D. Alabama, N. D.

July 24, 1957.

Knabe & Nachman, Montgomery, Ala., for plaintiffs Gayle, Parks, and Sellers.

Hill, Robison & Belser, Montgomery, Ala., for plaintiff Sellers.

Rushton, Stakely & Johnston, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

These causes were submitted to the Court upon the motions of Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, and Non-Pareil Publishing Corporation, a Corporation, made separately for each defendant, and each motion seeking dismissal of the actions upon several grounds. The only ground the Court considers has any merit is that one seeking to have the service of summons quashed and the cause dismissed for lack of jurisdiction of the person of these defendants.

The question of jurisdiction was set for an oral hearing, upon which hearing testimony was taken and exhibits introduced. After it became evident to the Court that more evidence was needed to intelligently decide this question and at the request of plaintiffs, the Court ordered agents of these defendants to submit to oral examination and to produce designated records for plaintiffs' inspection.

All this evidence is now before and being considered by the Court.

Briefly, but sufficient for this determination, the facts are as follows:

Plaintiffs, the three City Commissioners of Montgomery, Alabama, bring these separate actions against the defendants Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, Non-Pareil Publishing Corporation, a Corporation, and American News Company, a Corporation, each plaintiff claiming actual and punitive damages of $250,000, alleging same to

have been incurred as a proximate consequence of defendants falsely and maliciously publishing in the City of New York certain matters in the May, 1957, issue of *Ken* Magazine; said published matters allegedly damaged the plaintiffs' character and reputation, personally and as public officials of the City of Montgomery, Alabama.

Service was obtained upon each of these defendants as provided and in the manner prescribed by Title 7, §§ 199(1), 192, and 193 of the 1940 Code of Alabama, as amended,[1] plaintiffs having al-

1. "§ 199(1). *Service on non-resident doing business or performing work or service in state.*—Any non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such non-resident, or his, its or their agent, servant or employee. Service of such process shall be made by serving three copies of the process on the said secretary of state, and such service shall be sufficient service upon the said non-resident of the state of Alabama, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the secretary of the state to the defendant at his last known address, which shall be stated in the affidavit of the plaintiff or complainant hereinafter mentioned, marked 'Deliver to Addressee Only' and 'Return Receipt Requested', and provided further that such return receipt shall be received by the secretary of state purporting to have been signed by said non-resident, or the secretary of state shall be advised by the postal authority that delivery of said registered mail was refused by said non-resident; and the date on which the secretary of state receives said return receipt, or advice by the postal authority that delivery of said registered mail was refused, shall be

treated and considered as the date of service of process on said non-resident. The secretary of state shall make an affidavit as to the service of said process on him, and as to his mailing a copy of the same and notice of such service to the non-resident, and as to the receipt of said return receipt, or advice of the refusal of said registered mail, and the respective dates thereof, and shall attach said affidavit, return receipt, or advice from the postal authority, to a copy of the process and shall return the same to the clerk or register who issued the same, and all of the same shall be filed in the cause by the clerk or register. The party to a cause filed or pending, or his agent or attorney, desiring to obtain service upon a non-resident under the provisions of this section shall make and file in the cause, an affidavit stating facts showing that this section is applicable, and stating the residence and last known post office address of the non-resident, and the clerk or register of the court in which the action is filed shall attach a copy of the affidavit to the writ or process, and a copy of the affidavit to each copy of the writ or process, and forward the original writ or process and three copies thereof to the sheriff of Montgomery county for service on the secretary of state and it shall be the duty of the sheriff to serve the same on the secretary of state and to make due return of such service. The court in which the cause is pending may order such continuance of the cause as may be necessary to afford the defendant or defendants reasonable opportunity to make defense. Any person who was a resident of this state at the time of the doing of business, or performing work or service in this state, but who is a non-resident at the time of the pendency of a cause involving the doing of said business or performance of said work or service, and

leged the defendants "have actually done and are now doing business" in the State of Alabama; and "that this cause of action has arisen out of the doing of such business by the defendants * * *."

The defendant American News Company, a Corporation, files its answer to each complaint, making no point regarding service upon it or jurisdiction of this Court over it. This defendant actually distributes the publications of the Atlas Magazines, Inc., a Corporation, and the Non-Pareil Publishing Corporation, a Corporation, and, in fact, distributed in Montgomery, Alabama (and other points in Alabama), the May issue of the magazine *Ken*, which contained the alleged libelous matter.

any corporation which was qualified to do business in this state at the time of doing business herein and which is not qualified at the time of the pendency of a cause involving the doing of such business, shall be deemed a non-resident within the meaning of this section, and service of process under such circumstances may be had as herein provided.

"The secretary of state of the state of Alabama, or his successor in office, may give such non-resident defendant notice of such service upon the secretary of state of the state of Alabama in lieu of the notice of service hereinabove provided to be given, by registered mail, in the following manner: By causing or having a notice of such service and a copy of the process served upon such non-resident defendant, if found within the state of Alabama, by any officer duly qualified to serve legal process within the state of Alabama, or if such non-resident defendant is found without the state of Alabama, by a sheriff, deputy sheriff, or United States marshal, or deputy United States marshal, or any duly constituted public officer qualified to serve like process in the state of the jurisdiction where such non-resident defendant is found; and the officer's return showing such service and when and where made, which shall be under oath, shall be filed in the office of the clerk or register of the court wherein such action is pending.

"Service of summons when obtained upon any such non-resident as above provided for the service of process herein shall be deemed sufficient service of summons and process to give to any of the courts of this state jurisdiction over the cause of action and over such non-resident defendant, or defendants, and shall warrant and authorize personal judgment against such non-resident defendant, or defendants, in the event that the plaintiff prevails in the action.

"The secretary of state shall refuse to receive and file or serve any process, pleading, or paper under this section unless three copies thereof are supplied to the secretary of state and a fee of three dollars is paid to the secretary of state; and no service shall be perfected hereunder unless there is on file in the office of the secretary of state a certificate or statement under oath by the plaintiff or his attorney that the provisions of this section are applicable to the case."

"§ 192. *Service on designated agent of foreign corporations; proof of agency.*—When a foreign corporation has filed an instrument in writing designating one or more agents in this state as provided by this Code, process issuing against such foreign corporation in actions at law may be served upon any agent so designated; and the certificate of the secretary of state, or of the auditor, as the case may be, showing such designation, is evidence of the fact of such agency. If the agent designated by such foreign corporation shall die, resign, remove from the state, or his authority shall cease from any cause, and no other agent shall be designated by such foreign corporation, the service of process issuing against it may be made upon the secretary of state; and the officer serving such process upon the secretary of state must immediately transmit a copy thereof by mail to such corporation at its home office, and state such fact in his return."

"§ 193. *Service of process on corporation not qualified to do business in the state.*—Wherever a foreign corporation has carried on or transacted business in this state without qualifying to do business herein as is provided by the constitution and statutes of this state, and there is no other agent, and process in actions at law cannot be served on such foreign corporation as is provided in the preceding section, then any legal process may be served upon any agent or servant of such foreign corporation who has made contracts for the corporation, or who did the act which constituted the doing of business in this state. This section, however, shall not be exclusive of any other mode of service of process in the cases herein provided for."

The defendant Magazine Management Company was sued by plaintiffs originally as a corporation, but by agreement plaintiff in each case has amended to sue this defendant in its true capacity as a partnership. This partnership is composed of two New York citizens with offices in New York City, and renders administrative services to and exercises the over-all control of the other defendants. The costs of these services are charged to the corporation, for which and to the extent said services are rendered. This corporation does not now and has never maintained offices in the State of Alabama, has made no contracts in the State of Alabama, and had no contracts being executed in the State of Alabama, had no agent in the State of Alabama, and had no communication facilities that were being maintained in the State of Alabama.

The defendant Atlas Magazines, Inc., a Corporation, is also a New York Corporation with its principal place of business in New York City. Until November 1, 1956, Atlas was the distributor of magazines such as the one in question (this role now played by the defendant American News Company). Insofar as this case is concerned, Atlas' only function was to provide, through its bookkeeping facilities, the payment to the carrier for the freight on the publications. Immediate reimbursement was made to this defendant by the publisher of the publications. This defendant after November 1, 1956 (several months prior to the alleged injury), had no offices in Alabama, no agent in Alabama, no communication facilities in Alabama, made no contracts in Alabama, and had no contracts being executed in Alabama.

The defendant Non-Pareil Publishing Corporation, a Corporation, a separate entity from the other defendants even though its stock is wholly owned by the two partners of the defendant Magazine Management Company, a Partnership, is also a New York Corporation with its principal place of business in New York and also the publisher of the magazine which contained the alleged libelous matter. Prior to November 1, 1956, Atlas distributed its publications. Since that date, American News Company distributes its publications. The article in question was written by a "free lance" writer from the State of Massachusetts. This writer came to the State of Alabama at his own expense and gathered his "material" for the article. The writer is not made a party to any of these actions. The article after it was written was presented to this defendant's editor in New York City, accepted, published, and then distributed pursuant to this defendant's contract with the defendant American News Company, a Corporation. The title to the magazines, including the one in question, passed, pursuant to the terms of the contract, from publisher Non-Pareil to distributor American in New York. Actual possession was delivered to the distributor in New York and other northern cities where the various magazines of this publishing company were published. This defendant had no offices in Alabama, no communication facilities in Alabama, no contracts by it were executed in Alabama, and none of its contracts executed elsewhere were being carried out in Alabama. The only agent or employee of this defendant who entered the State of Alabama was an employee who, at all times, maintained his residence in the State of Florida, and on behalf of this defendant traveled over the four States of Florida, Mississippi, Alabama, and Louisiana. His duties, as agent of this defendant in this and these other States, required him to visit the various news stands and offices of the distributors (here the American News Company), and to observe whether the distributor was carrying out his contractual obligation to the publisher regarding the display and distribution of publisher's magazines and to report these observations to the Non-Pareil Publishing Company. This agent had no authority to contract on behalf of his employer and made no contracts on behalf of his employer; he had no authority to buy or sell on behalf of his employer, and did not buy or sell

on behalf of his employer. He had no authority to give orders, or take any other affirmative action on behalf of his employer. His sole function was to report his observations to his employer. This agent maintained no office in the State of Alabama and made no solicitations, directly or indirectly, for this defendant.

Several theories and numerous citations have been "made available" to the Court by the counsel representing the parties to this litigation. However, as the Court views the matter, the only question now necessary, or even appropriate, to decide is: Were these defendants Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, and Non-Pareil Publishing Corporation, a Corporation, or any one of them engaged in doing business within the territorial limits of the State of Alabama at or immediately prior to the publication and distribution of the May, 1957, issue of *Ken* magazine?

In determining what law is applicable, the cases mentioned and argued by counsel that were rendered prior to International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 [2] are not considered controlling, or even very respectable authority, since the Supreme Court in that case rendered prior cases that dealt with this question, to a considerable extent, impotent. As was stated by the Court in Labonte v. American Mercury Magazine, 98 N.H. 163, 96 A.2d 200, 203, 38 A.L.R.2d 742, 745:

"While it is true that the rule of International Shoe lacks definite preciseness in its application, it is quite clear that state jurisdiction is now exercised over foreign corporations in instances where it was formerly considered impossible. Almost all cases of libel actions against foreign publishing corporations were dismissed on jurisdictional grounds before the decision in International Shoe."

The Court is also of the opinion that in determining this question, it is not necessary to be concerned with the Alabama cases that deal with the matter of the intended sweep of the substituted service statutes, since the Alabama Supreme Court in 1950, speaking through Mr. Justice Simpson, recognized that the Federal law in such cases controlled; that was in the case of Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559, 560, and there, speaking for the Court, he stated:

"In determining the question, we are not here concerned with state law, since it is not controlling. The issue is regarded in this jurisdiction as a federal question of whether subjection of the defendant to this sovereignty comports with federal due process."

This same construction was made by a Federal district court of Alabama in Orange-Crush Grapico Bottling Co. v. Seven-Up Co., D.C.N.D.Ala., 128 F.Supp. 174.

A search of the opinions rendered by the Supreme Court subsequent to the International Shoe Co. case leads this Court to the conclusion that the Supreme Court there set out the extreme limits that may be gone to in determining that foreign corporations are "doing business" within the meaning of the substituted service statutes such as we are now dealing with. This is true, even in the face of Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, 903, 97 L.Ed. 1331, where Mr. Justice Black rendered a minority opinion—here advanced by the plaintiffs as strong authority for their present position. In the first place Polizzi v. Cowles is not applicable to the case now being considered by this Court. There, the Supreme Court's majority opinion reversed the lower court [3] for the sole reason the district court and the circuit court's decision on the question of "doing business" was based upon their interpretation of § 1391(c), Title 28 of

---

2. For example, Cannon v. Time, 4 Cir., 1940, 115 F.2d 423.

3. Polizzi v. Cowles Magazines, Inc., 5 Cir., 1952, 197 F.2d 74.

the United States Code. As a matter of fact, the Supreme Court there stated:

"We express no opinion whether Respondent was 'doing business' in Florida within the meaning of the due process requirements set out in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, because Respondent has not contended that the International Shoe test is not met."

Here the defendants seriously and vigorously do contend the International Shoe Co. test is not met.

In the second place, even if (as the plaintiff-city commissioners insist) this Court followed Mr. Justice Black's minority opinion in Polizzi v. Cowles, the position of the plaintiffs would still be untenable. In Polizzi, the defendants had a "regular agent there" (in Florida), "paid by the month," whose sole job was to carry on activities for Cowles Magazines, Inc. In this case, the only agent Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, and Non-Pareil Publishing Corporation, a Corporation, had that ever came near Alabama was the agent of Non-Pareil, and he did not reside here. He performed no activities in this State other than observing the manner in which the defendant American News Company was carrying out its contract with the Non-Pareil Publishing Company and reporting to Non-Pareil his observations.

Thus, the test set up by the International Shoe Co. case is here controlling and must be applied. In that case, the Court stated [326 U.S. 310, 66 S.Ct. 159]:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S.

W. R. Co. v. Alexander, supra, 227 U.S. 228, 33 S.Ct. 248, 57 L.Ed. 486; International Harvester Co. v. Kentucky, supra, 227 U.S. 234 U.S. 587, 34 S.Ct. 946, 58 L.Ed. 1479. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra [95 U.S. 714, 24 L.Ed. 565]; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573."

In that case, the employees involved numbered thirteen; all maintained residences in the State of Washington; all were soliciting salesmen, receiving commissions; all were furnished samples by the shoe company, and, in some instances, permanent sample rooms were obtained and paid for by the foreign corporation. In commenting upon this factual situation, the Supreme Court in International Shoe Co. said "regular and systematic solicitation" through the thirteen salesmen "was sufficient to constitute doing business in the state so as to make appellant amenable to suit in its courts."

The following serves to illustrate the Supreme Court was not then willing to go nearly so far as plaintiffs would have this Court go:

"The casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit * * *."

Here, the casual and non-scheduled "observation and reporting" trips of the agent of Non-Pareil cannot bring this case within even the extreme limits of the International Shoe Co. test.

This Court concludes, by paraphrasing Mr. Chief Justice Stone, that the defend-

ants Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, and Non-Pareil Publishing Corporation, a Corporation, did not by their activities of "doing business" manifest their "presence" in the State of Alabama so as to give this Court jurisdiction to render a judgment in personam concerning them.

There is no reason for this Court, at this time, to consider remandment to the State Court from whence these cases were removed, since the defendant American News Company has in each case answered plaintiff's complaint and stands ready for trial. Even if such were not the case, it is not considered that remandment would be proper under the circumstances, since the Alabama statutes provide no wider reach of process and no method of service not here attempted and considered.[4]

An order of dismissal as to Magazine Management Company, a Partnership, Atlas Magazines, Inc., a Corporation, and Non-Pareil Publishing Corporation, a Corporation, will be entered in accordance with this opinion.

---

4. See Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289.